## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

CHARLES CAMP                                    * CIVIL ACTION NO._____

VERSUS                                          * JUDGE:_____

GARY SEXTON, IN HIS OFFICIAL CAPACITYAS
SHERIFF, WEBSTER PARISH, CAPTAIN JOHN LEWIS
BAYOU DORCHEAT CORRECTIONAL CENTER
DEPUTY JOE CORNELIUS, BAYOU DORCHEAT
CORRECTIONAL CENTER, STEVE RISNER
WARDEN, BAYOU DORCHEAT CORRECTIONAL
CENTER, TROOPER PHILLIP KROUSE, LOUISIANA
STATE POLICE, TROOP G, OTHER UNKNOWN
LOUISIANA STATE POLICE TROOPERS,
OTHER UNKNOWN BAYOU DORCHEAT
CORRECTIONAL CENTER OFFICERS, OTHER
UNKNOWN BAYOU DORCHEAT CORRECTIONAL
CENTER EMPLOYEES, OTHER UNKNOWN
WEBSTER PARISH SHERIFF'S DEPARTMENT
EMPLOYEES, OTHER UNKNOWN WEBSTER        *MAGISTRATE JUDGE HORNSBY
PARISH OFFICIALS, THE WEBSTER PARISH
SHERIFF'S OFFICE, THE WEBSTER PARISH
POLICE JURY, AND THE BAYOU DORCHEAT
CORRECTIONAL CENTER

                                                *   DEMAND FOR TRIAL BY JURY

### COMPLAINT FOR DAMAGES

The complaint of CHARLES CAMP respectfully shows:

1.

Plaintiff brings this action to recover from the defendants compensatory damages, punitive damages, reasonable attorney's fees, judicial interest, and all costs and expenses incurred in these proceedings, pursuant to 42 United States Code, Sections 1983 and 1988, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, and other applicable Federal and State statutes and constitutional provisions, based upon the following:

PARTIES

2.

The plaintiff in this proceeding is:

a. CHARLES CAMP, who is a person of full age and majority, a citizen of the city of Minden; Parish of Webster, State of Louisiana.

3.

Made defendants herein are the following:

a. GARY SEXTON, a person of the full age of majority, domiciled and residing in the City of Minden, Parish of Webster, State of Louisiana, employed at all times material to this Complaint by the Parish of Webster, Louisiana, as the Sheriff of Webster Parish;

b. CAPTAIN JOHN LEWIS, a person of the full age of majority, domiciled and residing in the City of Minden, Parish of Webster, State of Louisiana, employed at all times material to this Complaint by the Parish of Webster, Louisiana, as an employee of the Bayou Dorcheat Correctional Center;

c. STEVE RISNER, a person of the full age of majority, domiciled and residing in the City of Minden, Parish of Webster, State of Louisiana, employed at all times material to this Complaint by the Parish of Webster, Louisiana, as the Warden of Bayou Dorcheat Correctional Center;

d. DEPUTY JOSEPH CORNELIUS, a person of the full age of majority, domiciled and residing in the City of Minden, Parish of Webster, State of Louisiana, employed at all times material to this Complaint by the Parish of Webster, Louisiana, as an employee of the Bayou Dorcheat Correctional Center;

e. TROOPER PHILLIP KROUSE, a person of the full age of majority, domiciled and residing in the City of ____, Parish of Webster, State of Louisiana, employed at all times material to this Complaint by the State of Louisiana as a State Trooper, for the Louisiana State Police, Troop G.

f. Various employees (State Police) who were employed by the State of Louisiana, whose identities are unknown to plaintiff at this time, but who are citizens of the State of Louisiana, and who were employed as Louisiana State Police Troopers at the Louisiana State Police, Troop G.

g. Various employees who were employed by the Parish of Webster, Louisiana, whose identities are unknown, but who are citizens of the State of Louisiana, and who were employed as jailors in the Bayou Dorcheat Correctional Center.

h. Various employees who were employed by the Parish of Webster, Louisiana, whose identities are unknown, but who are citizens of the State of Louisiana, and who were

employed in the Bayou Dorcheat Correctional Center.

i.   Various employees who were employed by the Parish of Webster, State of Louisiana, whose identities are unknown, but who were employed as Deputy Sheriff's at the Webster Parish Sheriff's Office.

j.   OTHER UNKNOWN WEBSTER PARISH OFFICIALS;

k.   WEBSTER PARISH SHERIFF'S OFFICE;

l.   WEBSTER PARISH POLICE JURY;

m.   BAYOU DORCHEAT CORRECTIONAL CENTER, a Correctional Center in the Parish of Webster, State of Louisiana; and

Reference to "defendants" herein shall mean one or more of the individuals and entities described in paragraphs a through n, above, and participants and /or co-conspirators acting in concert with them.   Plaintiff sues each and all individuals in subparagraphs a through j in their individual capacities. Plaintiff sues defendants in paragraphs k through n in their governmental capacity.

**JURISDICTION AND VENUE**

4.

This is a civil action seeking damages against defendants for committing and conspiring to commit acts, under color of law, which subjected plaintiff, Mr. Camp to cruel and unusual punishment as prohibited by the Eighth Amendment of the United States Constitution and deprived him of his rights secured under the Constitution and laws of the United States and which deprived plaintiff of liberty and property without due process of the law and equal protection of the laws.   Defendants committed and conspired to commit acts, under color of law, designed to intentionally and repeatedly deprive him of his right to access of his attorney in violation of his sixth amendment of the United States Constitution. Plaintiff was denied due process as guaranteed plaintiff by Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments' to the United

States Constitution and other statutes and constitutional provisions This course of action arises under the Constitution of the United States and the provisions of 42 United States Code, Sections 1983 and 1988. This court has jurisdiction pursuant to 28 United States Code, sections 1331 and 1343.

Jurisdiction is further invoked pursuant to 28 United States Code, section 1332, in its exercise of diversity Jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75, 000.00, exclusive of interest and cost and is between citizens of different states.

Jurisdiction of this court is further invoked pursuant to 28 United States Code, section 1367, in its exercise of Jurisdiction over Louisiana State Law claims that are so related to claims in the action within the District Court's original jurisdiction that they form that they form a part of the same case or controversy under article 111 of the United States Constitution.

5.

Venue is proper in this District court and division pursuant to 28 United States Code, section 1391 (b).

**STATEMENT OF FACTS**

6.

Charles Camp is a 74 year-old man.

7.

Mr. Camp is a resident of Minden, Webster Parish, Louisiana.

8.

Mr. Camp has been a longtime target of Sheriff Gary Sexton because of Mr. Camp's attempt to obtain through La. Revised Statutes 44:2 and 44:32, right to public records, information concerning various investigative reports of unethical activity alleged to have been

committed by the Webster Parish Sheriff, Gary Sexton.

9.

Mr. Camp had been a longtime resident of Webster Parish, a law abiding citizen and a reputable businessman in the community.  He was active in many Political fundraisers.

10.

On or about May 2006, Mr. Camp exercised his rights under the freedom of information act by requesting Sheriff Gary Sexton to produce certain public records that were in the possession of Sheriff Sexton.  He was informed that said records would be produced, wherein he never received such.

11.

Plaintiff, after numerous unsuccessful attempts to obtain these public records, hired Mr. Ross Owen attorney at law.  Mr. Owen filed a writ of mandamus on behalf of Plaintiff.   The case was assigned to Judge Parker Self.  The District Court Judge refused to allow plaintiff to admit into evidence, key evidence.   The District Court Judge also ruled that Plaintiff would not be permitted to call his one and only witness, the key witness, postmaster for the City of Minden who personally attempted to hand deliver a certified, restricted delivery letter to Sheriff Sexton, which contained yet another formal request for production of public records. Said witness was crucial to plaintiff's writ as upon information and belief the postmaster would have testified that Sheriff Sexton refused delivery of the letter of request. The District Court additionally ruled that the refused letter would not be admitted into evidence.  Mr. Owen was informed that if his client proceeded with the hearing and did not receive a favorable outcome, plaintiff would be assessed all cost and attorney's fees for opposing party, an amount likely to be well over ten thousand dollars ($10,000.00) as all of Mr. Camp's evidence and his only witness were inadmissible per Judge Self, Mr. Camp had no alternative, but to withdraw his Writ of Mandamus.

12.

Plaintiff had been introduced to Judge Self during Judge Self's Campaign for District Court Judge prior to this hearing.  The introduction was made through an elected official and a reputable local attorney.  Mr. Camp was asked to support Judge Self in his campaign for election. Mr. Camp had to decline as he had already pledged his support to Judge Self's opponent.  Mr. Camp was a big contributor to Self's opposition and was a very active participant in Ted Johnson's campaign for election.  This caused Mr. Camp great concern to plaintiff as he asserts he did not get a fair and impartial hearing due to this conflict of interest.

13.

Shortly after what Mr. Camp concluded to be a miscarriage of justice, Mr. Camp in the heat of passion made an error in Judgment by placing a telephone call to The Sheriff's office and subsequently leaving a message on the Sheriff's voice mail referring to him in an unprofessional manner and calling him a liar and an S.O.B.  As a result of this error in judgment charges were brought against Mr. Camp for "harassing phone calls".

14.

Shortly after Plaintiff made a complaint to the Legislative auditor regarding Sheriff Sexton using his Parish issued vehicle for personal travel and personal business, more charges were filed against Mr. Camp in retaliation.  Sheriff Sexton repeatedly abused his position of authority to retaliate against Plaintiff.

15.

Plaintiff admittedly has been active and vocal in his willingness to assist the Attorney General and the Justice Department in any and all investigation into improper, and or illegal and or unethical conduct of Sheriff Sexton.  Mr. Camp's latest Webster Parish arrest stemmed from

allegations that he allegedly made a threatening phone call to the one of the local gaming boats (casino).

16.

This alleged phone call was alleged to have been made by Mr. Camp on or about July 20, 2007. His arrest was precipitated by individuals informing Sheriff Sexton that Plaintiff was willing to share with the media the information he had about Sheriff Sexton's questionable activities. This is clearly demonstrated by the affidavit in support of his arrest. The affidavit in support of plaintiff's arrest for the alleged threatening phone call, alleged to have occurred in July of 2007, was not prepared or signed by a Judge until August 15, 2007.

17.

On or about August 15, 2007 at about 8:00 a.m. former Sheriff Ted Riser of Webster Parish went to the home of Charles Camp as a courtesy to check his mail because he had been assured that the paperwork requested from the Attorney General's office pertaining to the investigation of Sheriff Sexton would be delivered by such date. The paperwork was not in the mailbox. Mr. Camp became very upset with the continued run around pertaining to his request from the Sheriff's office for the public information and he stated that he was "going to put on his suit and go to Shreveport and alert the media" Mr. Ted Riser left Plaintiff's phone at approximately 10:00 a.m.

18.

At approximately 1:30 P.M. plaintiff was driving down Shreveport Rd. in Webster Parish when he noticed that he was being followed by a white car. He entered the Circle K and the car pulled in a spot. Upon exiting the store plaintiff was approached by Trooper Phillip Krouse with the Louisiana State Police, and informed that he was

under arrest for "threatening to blow up the horseshoe casino".  Plaintiff was very confused and became very upset; he was then surrounded by at least four other Troopers in plain clothes.  Plaintiff made a call to Ted Riser.  when Ted Riser came to get Charles Camp from the store where he was arrested, Trooper Phillip Krouse told him he wanted him to know that this had nothing to do with Mr. Camp and his problems with Sherriff Sexton.

19.

The trooper was unable to get plaintiff in the back of the police car due to his degenerative back trouble and arthritis so he was taken to Bayou Dorcheat Correctional Center by Mr. Risner, where he was booked by a female deputy.

20.

While waiting for his bond to be processed, plaintiff was approached by Captain John Lewis and Deputy Joseph Cornelius.   Deputy Joseph Cornelius was recently arrested himself for DUI and he was carrying with him a copy of the inquisitor; He and Deputy Lewis began taunting the plaintiff because they believed he is the person responsible for alerting the news of the deputies arrest, which had been withheld from the newspapers.

21.

Cornelius and Lewis ordered plaintiff to strip down and place his clothes in the basket. Plaintiff was again confused he certainly did not think they meant for him to strip down right where he was in the presence of female deputies.  Plaintiff was forced to strip down to bare naked, in front of 3 female deputies; this was unnecessary as he was to be taken to Bossier, but the 74 year old man was stripped down and humiliated in front of female deputies.

22.

Plaintiff's glasses were taken from him leaving him unable to see at all and he was taken naked to the shower where he was told to turn around.  In an abrupt manner and without any warning the deputy began to spray plaintiff about his entire body.  He was continuously sprayed with the heavy hard spray in the face and eyes.  The 74 year old man was unable to see, his face was burning, his eyes were burning and the spray was then shot straight up his nose making it difficult for him to breathe.  He could not see anything but could hear sounds of laughter as the other corrections officers both male and female laughed out loud and his endurance of pain and humiliation.

23.

Plaintiff was then told to hit the button on the wall to wash off.  He could not see anything and because he had zero vision, he was unable to locate the button, someone shut the shower door and it frightened the already frantic 74 year-old man. As he turned around the slippery area and lack of ability to see due to the de-lice spray being sprayed directly into his eyes his fell hard to the floor of the shower.  He hurt his back and side and broke what was later determined to be rib number 7 and bruised several other ribs. He sustained bruises and abrasions form the fall.  It was extremely painful as well as humiliating.  The laughter continued as he fell.

24.

Plaintiff also severely injured his knee as it twisted and popped when he fell, he finally found the button and washed off and exited the shower. Deputy Cornelius handed him his prison wear and a pair of underwear and told him to get dressed. Plaintiff asked why he could not have his own clothing to wear and Cornelius relied "because you are

going to jail where you belong".  Plaintiff immediately complained to Deputy Cornelius and told him that he was in extreme pain from his fall, that his eyes were burning and he was worried about his vision because everything was very hazy and he did not have the ability to see.

25.

Plaintiff asked the deputy if he could please see a doctor because he was in excruciating pain. His request for a doctor was denied and he was locked in a cell for approximately 2 hours until Bossier deputies arrived to pick him up to transfer him to Bossier.

26.

Plaintiff then told the deputy from Bossier that he really needed to see a doctor, that he was in terrible pain, but the deputy replied that he was only authorized to take him to the Bossier jail.

27.

The plaintiff was illegally detained arrested and seized without justification. The arrest warrant was motivated by retaliation.

28.

The Louisiana State Police and Bayou Dorcheat Correctional Center violated the plaintiffs' Fourth Amendment right against unlawful search and seizure to house plaintiff.

29.

The Bayou Dorcheat Correctional Center jailors were inadequately trained at the time Mr. Camp was injured and maced.

31.

The Bayou Dorcheat Correction Center had inadequate, outdated, and under-maintained monitoring equipment at the time Mr. Camp was injured, or the equipment was turned off as no tape has been presented.

32.

The Bayou Dorcheat Correctional Center had inadequate medical staff and emergency procedures to provide the emergency care that Mr. Camp needed after he was injured.

33.

At all times material to this complaint, Mr. Camp was incarcerated as an inmate in the Bayou Dorcheat Correctional Center operated by the Parish of Webster and his conditions of confinement were of such a nature that he was subjected to cruel and unusual punishment.

34.

All of the defendants listed in above paragraph 3, subparagraphs a-j, were aware of the injury on Charles Camp.

35.

All of the defendants listed in above paragraph 3, subparagraphs a-n had specific, individual and personal knowledge of the injury to Charles Camp; all of them had the power and authority to remedy the situation; and none of the defendants took reasonable actions to remedy or address the situation.

36.

To the plaintiff's knowledge and belief, Gary Sexton, Sheriff, had specific knowledge of the serious condition of Charles Camp after the injury; that he failed to take any action to remedy

the conditions; that the conditions arose to such a level that Mr. Camp was subjected to cruel and unusual punishment; that such action and inaction indicated deliberate indifference to Mr. Camp's conditions of confinement; that his failure to act was a direct cause of Mr. Camp's injuries.

37.

At all times material to this complaint, Captain John Lewis, was a jailor at Bayou Dorcheat Correctional Center, who was responsible for supervision of the inmates.

38.

To the plaintiff's knowledge and belief, Captain John Lewis, had specific knowledge of the attack on Mr. Montgomery; that Mr. Camp's condition posed an imminent threat to his safety; that he failed to take any action to remedy the conditions; that such action and inaction indicated deliberate indifference to Mr. Camp's conditions of confinement; that the conditions arose to such a level that subjugation of Mr. Camp to the conditions was cruel and unusual punishment; that his actions were a direct cause of Mr. Camp's injuries; that it was foreseeable that Mr. Camp would suffer injuries.

39.

At all times material to this complaint, Deputy Joseph Cornelius, was a jailor at Bayou Dorcheat Correctional Center, who was responsible for supervision of the inmates.

40.

To the plaintiff's knowledge and belief, Deputy Joseph Cornelius, had specific knowledge of the injury to Mr. Montgomery; that Mr. Camp's condition posed an imminent threat to his safety; that he failed to take any action to remedy the conditions; that such action and inaction indicated deliberate indifference to Mr. Camp's conditions of confinement; that the conditions arose to such a level that subjugation of Mr. Camp to the conditions was cruel and unusual punishment; that his actions were a direct cause of Mr. Camp's injuries; that it was foreseeable that Mr. Camp would suffer injuries.

41.

At all times material to this complaint, Steve Risner, was the Warden of Bayou Dorcheat Correctional Center. He was directly responsible for the overall management of all operations of the jail, including overseeing all of employees and inmates.  Captain John Lewis, Deputy Joseph Cornelius and all other employees of the jail reported directly to Steve Risner.

42.

To plaintiff's knowledge and belief, Steve Risner, had specific knowledge of the injury to Mr. Camp. His actions subjected Mr. Camp to cruel and unusual punishment; His actions were the direct cause of Mr. Camp's injuries; and that it was foreseeable that Mr. Camp would suffer the injuries.

43.

At all times material to this complaint, there were several employees of the Bayou Dorcheat Correctional Center who worked as jailors. Their identities are unknown. As jailors it was their duty to operate the jail and supervise the inmates.

44.

To the plaintiff's knowledge and belief, various employees, who were employed by the Parish of Webster at Bayou Dorcheat Correctional Center, who identities are unknown and who were employed as jailors, had specific knowledge of the injury to Mr. Camp;  that Mr. Camp's condition posed an imminent threat to his safety; that such person failed to take any action to remedy the conditions; that such action and inaction indicated deliberate indifference to Mr. Camp's conditions of confinement; that the conditions arose to such a level that subjugation of Mr. Camp to the conditions was cruel and unusual punishment; that such persons failure to act was a direct cause of Mr. Camp's injuries; that it was foreseeable that Mr. Camp would suffer injuries.

45.

At all times material to this complaint, Sheriff, GARY SEXTON, CAPTAIN JOHN LEWIS, STEVE RISNER, Warden, DEPUTY JOSEPH CORNELIUS, TROOPER PHILLIP KROUSE, Louisiana State Police, Troop G, and other unnamed and/or unknown employees and/or agents of the Parish of Webster, and State of Louisiana, were acting in their individual capacities and were acting under the color of state law and statutes, customs, policies, ordinances, and usages of the State of Louisiana, Parish of Webster, and the Bayou Dorcheat Correctional Center.

**COUNT ONE**

**THE SUBJUGATION OF MR. CAMP TO THE DANGEROUS CONDITIONS OF CONFINEMENT IN THE BAYOU DORCHEAT CORRECTIONAL CENTER WAS A VIOLATION OF MR. CAMP'S EIGHTH AMENDMENT RIGHT TO BE FREE FROM THE INFLICITION OF CRUEL AND UNUSUAL PUNISHMENTS**

46.

Plaintiff's re-allege paragraphs 1-45 as though fully set forth herein.

47.

As discussed above, Mr. Camp was incarcerated at Bayou Dorcheat Correctional Center. The actions of the defendants listed in subparagraphs a-j in Paragraph 3constituted unlawful and malicious detention and confinement and they acted with intentional  and deliberate indifference and callous regard to the condition of Mr. Camp's confinement and said defendants were aware of a specific, impeding, and substantial threat to the health and safety of Mr. Camp, thus depriving Mr. Camp of his right to be free from the infliction of cruel and unusual punishments in violation of the Eighth Amendment  of the Constitution  of the United States and 42 United States Code, Sections 1983 and 1988.

48.

These constitutional deprivations render said defendants, along with other unnamed and/or unknown co-conspirators, liable to the plaintiff, jointly and severally, for full compensatory damages, including general damage, special damage(past, present, and future medical expenses) and loss of consortium claims, attorney's fees, and cost of this action sufficient to remedy the damages to plaintiff and for additional punitive damages.

## COUNT TWO

## THE FAILURE TO PROTECT MR. CAMP FROM CRUELTY AT THE HANDS OF CORRECTIONAL CENTER EMPLOYEES WAS A VIOLATION OF MR. CAMP'S EIGHTH AMENDMENT RIGHT TO BE FREE FROM THE INFLICTION OF CRUEL AND UNUSUAL PUNISHMENTS

49.

Plaintiff's re-allege paragraphs 1-48 as though fully set forth herein.

50.

As discussed above, Mr. Camp was incarcerated at Bayou Dorcheat Correctional Center. The actions of the defendants listed in subparagraphs a-j in Paragraph 3 constituted unlawful and malicious detention and confinement and they acted with intentional  and deliberate indifference and callous regard to the condition of Mr. Camp's confinement and said defendants were aware of a specific, impeding, and substantial threat to the health and safety of Mr. Camp  as a direct result of failure to protect Mr. Camp from the cruelty of correctional center employees, thus depriving the plaintiff of his right to be free from infliction of cruel and unusual punishments in violation of the Eighth Amendment  of the Constitution  of the United States and 42 United States Code, Sections 1983 and 1988.

51.

These  constitutional  deprivations  render  said  defendants,  along  with  other  unnamed

and/or unknown co-conspirators, liable to the plaintiff, jointly and severally, for full compensatory damages, including general damage, special damages (past, present, and future medical expenses) and loss of consortium claims, attorney's fees, and cost of this action sufficient to remedy the damages to plaintiff and for additional punitive damages.

## COUNT THREE

## THE FAILURE TO PROVIDE MR. CAMP NECESSARY MEDICAL CARE WAS A VIOLATION OF MR. CAMP'S EIGHTH AMENDMENT RIGHT TO BE FREE FROM THE INFLICTION OF CRUEL AND UNUSUAL PUNISHMENTS AND HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW

52.

Plaintiff's re-allege paragraphs 1-51 as though fully set forth herein.

53.

As discussed above, Mr. Camp was incarcerated at Bayou Dorcheat Correctional Center. The actions of the defendants listed in subparagraphs a-j in Paragraph 3 constituted unlawful and malicious detention and confinement and they acted with intentional  and deliberate indifference and callous regard to the condition of Mr. Camp's confinement and said defendants were aware of a specific, impeding, and substantial threat to the health and safety of Mr. Camp as a direct result of failure to provide him with necessary medical treatment during his confinement, this depriving him of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution  of the United States and 42 United States Code, Sections 1983 and 1988.

54.

These constitutional deprivations render said defendants, along with other unnamed and/or unknown co-conspirators, liable to the plaintiff, jointly and severally, for full compensatory damages, including general damage, special damages (past, present, and future medical expenses) and loss of consortium claims, attorney's fees, and cost of this action sufficient

to remedy the damages to plaintiff and for additional punitive damages.

## COUNT FOUR

### FEDERAL LAW LIABLITY OF THE PARISH OF WEBSTER, LOUISIANA

55.

Plaintiff's re-allege paragraphs 1-54 as though fully set forth herein.

56.

Acting under the color of law and pursuant to official policy or custom, the Parish of Webster, through its officials, administrators, police supervisors, and employees knowingly, recklessly, and with deliberate indifference and callous disregard for Mr. Camp's rights, failed to instruct, properly supervise, control and discipline defendants, and those working in concert with them, on their duties relevant to this proceeding. Those duties specifically include duties to refrain from violating and conspiring to violate the rights, privileges, and immunities guaranteed to Mr. Camp by the Constitution and laws of the United States and the laws of the State of Louisiana in the specifics set forth in the foregoing counts and other allegations of this complaint and otherwise depriving plaintiff of his constitutional and statutory rights, privileges and immunities. The Parish of Webster, Louisiana had knowledge, or had it exercised its duties to instruct, supervise, control, and discipline on a continuing basis should have had knowledge, that the wrongs were done or conspired to be done, as heretofore alleged, were about to be and were being committed. Defendants had the power to prevent the commission of this wrong, could have done so by the exercise of reasonable diligence, and knowingly, recklessly, and with deliberate indifference and in callous disregard of Mr. Camp's rights, failed to do so. The defendants, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of officials, administrators, police supervisors, and employees, heretofore described.

57.

As a direct and proximate cause of the acts of the defendants and those working in concert with them as described above, plaintiff herein has suffered personal injury, severe mental anguish, medical expenses, loss of consortium, and other losses in connection with the deprivations of Mr. Camp's constitutional and statutory rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution  of the United States and 42 United States Code, Sections 1983 and 1988.

58.

These constitutional deprivations render said defendants, liable to the plaintiff, for full compensatory damages, including general damage, special damages (past, present, and future medical expenses) and loss of consortium claims, attorney's fees, and cost of this action sufficient to remedy the damages to plaintiff.

## COUNT FIVE

## FEDERAL LAW LIABLITY OF THE WEBSTER PARISH POLICE JURY

59.

Plaintiff's re-allege paragraphs 1-58 as though fully set forth herein.

60.

Acting under the color of law and pursuant to official policy or custom, the Webster Parish Police Jury, through its officials, administrators, police supervisors, and employees knowingly, recklessly, and with deliberate indifference and callous disregard for Mr. Camp's rights, failed to instruct, properly supervise, control and discipline defendants, and those working in concert with them, on their duties relevant to this proceeding. Those duties specifically include duties to refrain from violating and conspiring to violate the rights, privileges, and immunities guaranteed to Mr. Camp by the Constitution and laws of the United States and the laws of the State of Louisiana in the specifics set forth in the foregoing counts and other allegations of this complaint and otherwise depriving plaintiff of his constitutional and statutory rights, privileges and immunities. The Webster Parish Police Jury had knowledge, or had it exercised its duties to

instruct, supervise, control, and discipline on a continuing basis should have had knowledge, that the wrongs were done or conspired to be done, as heretofore alleged, were about to be and were being committed. Defendants had the power to prevent the commission of this wrong, could have done so by the exercise of reasonable diligence, and knowingly, recklessly, and with deliberate indifference and in callous disregard of Mr. Camp's rights, failed to do so. The defendants, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of officials, administrators, police supervisors, and employees, heretofore described.

61.

As a direct and proximate cause of the acts of the defendants and those working in concert with them as described above, plaintiff herein has suffered personal injury, severe mental anguish, medical expenses, loss of consortium, and other losses in connection with the deprivations of Mr. Camp's constitutional and statutory rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States and 42 United States Code, Sections 1983 and 1988.

62.

These constitutional deprivations render said defendants, liable to the plaintiff, for full compensatory damages, including general damage, special damages (past, present, and future medical expenses) and loss of consortium claims, attorney's fees, and cost of this action sufficient to remedy the damages to plaintiff.

**COUNT SIX**

**STATE LAW LIABILITY OF DEFENDANTS**

63.

Plaintiff's re-allege paragraphs 1-62 as though fully set forth herein.

64.

Plaintiff shows that the actions and inactions of the defendants in listed in subparagraphs a-n of paragraph 3, deprived Mr. Camp of rights under the laws of the State of Louisiana, including but not limited to the Louisiana Constitution of 1974, as amended, and Louisiana Civil Codes Articles, 2315, 2317, and 2320, and including, but not limited to theories of recovery, such as negligence, gross negligence, and intentional torts.

65.

These non-exclusive State Law deprivations render said defendants,  along with unnamed and/or unknown participants, and/or co-conspirators, solidarily liable to said plaintiff, for full compensatory damages, including general damage, special damages (past, present, and future medical expenses) and loss of consortium claims, attorney's fees, and cost of this action.

**COUNT SEVEN**

**VICARIOUS LIABLITY OF THE PARISH OF WEBSTER, LOUISIANA**

66.

Plaintiff's re-allege paragraphs 1-65 as though fully set forth herein.

67.

Plaintiff shows that at all times material to this complaint, defendants, listed in subparagraphs a-n of paragraph 3, and any other unnamed and/or unknown persons were acting in their capacity as employees of the Parish of Webster and/or agents of the Parish of Webster, thereby rending the Parish of Webster liable for the acts of said defendants under the theories of agency, respondeat superior, and/or vicarious liability for all causes and claims stated herein arising under the laws of the State of Louisiana.

68.

These non-exclusive State Law deprivations render said defendants,  along with unnamed and/or unknown participants, and/or co-conspirators, solidarily liable to said plaintiff, for full compensatory damages, including general damage, special damages (past, present, and future medical expenses) and loss of consortium claims, attorney's fees, and cost of this action.

## REQUEST FOR TRIAL BY JURY

Plaintiff respectfully demands to have this case by tried by a jury.


## PRAYER

WHEREFORE, PLAINTIFFS pray for judgment in their favor and against the defendants in the following particulars:

a.  For judgment in favor of the plaintiffs and against the specified defendants, jointly, severally, for past, present, and future compensatory damages, including general damages, special damages (past, present and future medical expenses);

b.  For judgment in favor of the plaintiff and against each specified defendant, jointly and severally, for appropriate punitive damages;

c.  For judgment in favor of the plaintiff and against each specified defendant, in solido, for past, present and future compensatory damages, including general damages, special damages(past, present, and future medical expenses);

d.  For reasonable attorney's fees;

e.  For interest on all monetary awards from date of judicial demand until paid;

f.  For all costs of this proceeding, including expert witness fees; and

g.  Such other relief as this Court deems just and equitable.

Respectfully Submitted,

H. MELISSA SUGAR
ATTORNEY AT LAW
520 Spring Street, Suite 201
Shreveport, Louisiana 71101
(318) 681-0900 Telephone
(318) 681-0902

 _S/_____
H. MELISSA SUGAR
BAR NO. 24718
ATTORNEY FOR PLAINTIFF,

CHARLES CAMP